UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JONATHAN DUBUC,

                              Plaintiff,           Case # 19-CV-389-FPG

v.                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

On November 13, 2015, Plaintiff Jonathan Dubuc protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (the "Act") alleging disability beginning January 1, 1992.[1] Tr.[2] 145. After the Social Security Administration ("SSA") initially denied his claim, Tr. 107, Plaintiff appeared, with counsel, at a hearing on March 23, 2018 before Administrative Law Judge William M. Manico (the "ALJ"). Tr. 41-95. On April 24, 2018, the ALJ issued an unfavorable decision. Tr. 19-36. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 13. For the reasons that follow, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

---

[1] Plaintiff received benefits as a child. Tr. 172. However, Supplemental Security Income is not payable prior to the month the application is filed. *See* 20 C.F.R. § 416.335. Plaintiff admitted as much in a letter to the ALJ in March 2018, indicating that he was "prepared to amend the alleged onset date to the date of filing, November 13, 2015." Tr. 200. It is not clear whether the onset date was ever formally amended.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

[3] The Court has jurisdiction over this action under 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

## LEGAL STANDARD

### I.       District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.      Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 416.920.

2

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in gainful activity since the application date.  Tr. 21.  At step two, the ALJ found that Plaintiff had the following severe impairments: migraine headaches, asthma, mild intellectual disorder, schizoaffective disorder, substance use disorder in remission, and affective disorders.  Tr. 21-22.  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment.  Tr. 22-25.  Next, the ALJ determined that Plaintiff retains the RFC to perform medium, unskilled work, "which allows him a regular work break approximately every two hours, and which does not involve the performance of fast paced assembly work, and where interactions with others is [sic] limited to occasional."  Tr. 25.  The ALJ also noted that Plaintiff "reads at the first grade level."  *Id.*

At step four, the ALJ found that Plaintiff had no relevant past work.  Tr. 35.  At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform, and therefore, the ALJ concluded that Plaintiff is not disabled.  Tr. 35.

**II.      Analysis**

Although it is somewhat difficult to discern the contours of Plaintiff's argument in support of reversal or remand, Plaintiff appears to argue that the RFC is not supported by substantial evidence because the ALJ improperly weighed and incorporated into the RFC the medical opinion evidence.  Specifically, Plaintiff disagrees with the ALJ's treatment of an opinion from Plaintiff's treating nurse practitioner Sheryl Campbell-Julien, which the ALJ gave "little weight;" a report from psychologist Tatyana Raby, Ph.D., which the ALJ gave "some weight;" and an opinion from

consultative psychological examiner Gina Zali, Psy.D., which the ALJ gave "great weight." The Court disagrees.

Plaintiff primarily quarrels with the ALJ's treatment of an opinion from Campbell-Julien, Plaintiff's treating nurse practitioner. On March 21, 2018, Campbell-Julien determined that Plaintiff has moderate restrictions in activities of daily living, social functioning, concentration, ability to respond appropriately to supervision, ability to perform simple tasks on a sustained basis, and ability to respond to customary work pressures. Campbell-Julien opined that Plaintiff had marked restrictions in ability to understand, remember, and carry out instructions, and ability to perform complex tasks. Tr. 1008-09.

The ALJ afforded "little weight" to this opinion. Tr. 33-34. In doing so, the ALJ recognized that "given claimant's deficits, he has problems with understanding and performing complex instructions," but concluded that "the evidence fails to corroborate marked limitations in any area" and found "no evidence to suggest that the claimant is unable to [do] unskilled, simple tasks," as the RFC allows. Tr. 34. The ALJ could not understand how Plaintiff could be so limited in functional ability in the workplace context, as Campbell-Julien opined, but also be capable of functioning without limitation inside his home and with public transportation. Tr. 34. The ALJ also pointed out that Campbell-Julien's opinion was inconsistent with Plaintiff's own admission at the hearing that he would not have difficulty understanding and performing relatively unskilled work. Tr. 34, 66-67 (testimony in which Plaintiff acknowledged that he could put away shopping carts or sweep a floor). Finally, the ALJ recognized that in addition to the above, "Campbell-Julien's opinion is entitled to little weight because she is an unacceptable medical source." Tr. 34.

The ALJ is correct that, as a nurse practitioner, Campbell-Julien's opinion is not an "acceptable" medical source as defined in 20 C.F.R. § 404.1513(a), the regulation applicable at

the time the claim was filed.  However, as SSR-06-03P notes, "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,'" such as nurse practitioners, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists."  SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).  Opinions from these sources are not considered "acceptable" and are therefore not entitled to controlling weight.  *Conlin v. Colvin*, 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015) (citing *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015)).  "However, the ALJ should consider information from 'other sources,' such as social workers, which 'may also help . . . to understand how [the claimant's] impairment affects [his] ability to work."  *Krach v. Comm'r of Soc. Sec.*, No. 3:13-CV-1089 GTS/CFH, 2014 WL 5290368, at *6 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)).  Although the ALJ is "free to decide that the opinions from 'other sources' . . . are entitled to no or little weight, those decisions should be explained."  *Piatt*, 80 F. Supp. 3d at 493 (quoting another source).  Furthermore, an ALJ may not disregard a medical opinion solely because the opinion is from a nonmedical source.  *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 335-36 (W.D.N.Y. 2018).  Like for a treating physician, "[t]he amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole."  *Williams v. Colvin*, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016).

Although Campbell-Julien maintained an extensive treating relationship with Plaintiff, treating him multiple times over the course of at least two years, Tr. 419, 434, 443, 489, 549, 632, 687, 729, 762, 777, 827, 868, the significant limitations she placed on Plaintiff's ability to function

in virtually all areas are not supported by the record.  As the ALJ acknowledged, there are inconsistencies between Campbell-Julien's opinion and the rest of the evidence in the record, including Plaintiff's own testimony.  Because Campbell-Julien's opinion is not entitled to controlling weight, the ALJ was not wrong to discount this opinion for the stated reasons.  *See Torbicki v. Berryhill*, No. 17-CV-386(MAT), 2018 WL 3751290, at *4 (W.D.N.Y. Aug. 8, 2018) (ALJ properly afforded opinion of social worker "little weight" because she was not an acceptable medical source, she completed a check-box form in rendering her opinions, and her opinion conflicted with other medical evidence in the record).

This is especially true in light of the other opinion evidence in the record, on which the ALJ relied more extensively in crafting the RFC.  For example, the ALJ gave "partial weight" to the March 2018 opinion of neuropsychologist Dr. Raby, who performed intellectual functioning testing on Plaintiff.  Tr. 33.  The ALJ incorporated some of Dr. Raby's findings regarding Plaintiff's diminished intellectual functioning into the RFC, as they were consistent with the record.  But the ALJ concluded that Dr. Raby's opinion that Plaintiff was disabled from competitive employment was improper as a decision reserved to the Commissioner and inconsistent with Dr. Raby's conclusion that Plaintiff "is capable of performing some routine, unskilled jobs and may benefit from vocational rehabilitation."  Tr. 33, 1000.  The ALJ incorporated this finding into the RFC by limiting Plaintiff to "unskilled" work.  Tr. 25.  Aside from the opinions discussed above, Dr. Raby's opinion mostly relays raw testing data but does not translate that data into functional limitations upon which the ALJ could rely.

Dr. Zali, a consultative evaluator, does.  In 2016, Dr. Zali opined that Plaintiff has no limitations in his ability to follow and understand simple instructions or perform simple tasks independently.  He has moderate limitations in maintaining concentration and attention,

maintaining a regular schedule, learning new tasks, performing complex tasks, making appropriate decisions, and in dealing with stress. Tr. 309. Dr. Zali noted that "[d]ifficulties are caused by cognitive deficits and symptoms of depression." *Id.* The ALJ gave "great weight" to this opinion, noting that the level of functioning was consistent with the medical evidence and Plaintiff's own statements. Tr. 32-33. The ALJ incorporated Dr. Zali's opinion into the RFC by limiting Plaintiff to "unskilled" work that does not involve fast-paced production, with regular breaks every two hours, and only occasional interaction with the public. These limitations account for Plaintiff's moderate limitations in maintaining concentration and schedule and performing simple tasks, as described by Dr. Zali. *See Martinez v. Comm'r of Soc. Sec.*, No. 16-CV-908, 2017 WL 2633532, at *7 (N.D.N.Y. June 15, 2017) (collecting cases, and noting that the "Second Circuit has held that moderate limitations in work related functioning do[] not significantly limit, and thus prevent, a plaintiff from performing unskilled work") (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)); *Jimmerson v. Berryhill*, 16-CV-442-FPG, 2017 WL 3149370, at *3 (W.D.N.Y. July 25, 2017) (moderate limitations in concentration and maintaining a regular schedule are accommodated by an RFC that limits the claimant to unskilled, simple tasks, in a low stress environment with limited interactions with others); *Lowry v. Commissioner*, 15-CV-1553, 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017) (moderate limitations in maintaining attention and concentration, performing activities within a schedule and maintaining regular attendance, and completing a normal workday without interruption, are sufficiently accommodated by an RFC that limits claimant to unskilled work with simple, routine tasks), *Report and Recommendation adopted by* 2017 WL 1291760 (N.D.N.Y. Apr. 7, 2017). The ALJ also noted that Plaintiff reads at a first-grade level, Tr. 25, which the vocational expert indicated would still permit Plaintiff to perform

work found in the national economy, Tr. 88.  Therefore, the RFC limiting Plaintiff to "unskilled," slower work, with only occasional interaction with others was supported by substantial evidence.

Plaintiff attacks the ALJ's decision for "succumbing to the temptation to play doctor" by failing to "explain how an individual with moderate difficulties in attendance and concentration would not be absent from work more than one day per month or off task more than ten percent of the time."  ECF No. 11-1 at 4.  An ALJ is not qualified to assess a claimant's RFC based on the bare medical findings.  *Berman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y. 2018).  Yet that is precisely what Plaintiff would have the ALJ do here; there is no medical evidence in the record addressing Plaintiff's propensity for absenteeism.  For the ALJ to include such a limitation here would be to invent a limitation out of whole cloth.

It is clear from the record that Plaintiff has mental health impairments that significantly limit his ability to function in the workplace.  Plaintiff believes that his limitations are more significant than the RFC would allow.  The question here, however, is only whether the limitations set forth in the RFC are supported by substantial evidence.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (internal quotation marks omitted)).  As set forth above, they are, and the ALJ's decision must be affirmed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 11, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 13, is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 2, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court